An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1025

Filed 5 August 2026

Wake County, Nos. 22CR002518-910, 22CR277237-910

STATE OF NORTH CAROLINA

v.

ISAIAH ALI MURCHISON-CLARK, Defendant.

Appeal by Defendant from judgment entered 26 February 2025 by Judge George Robert Hicks III in Wake County Superior Court. Heard in the Court of Appeals 11 March 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Steven Armstrong, for the State-appellee*
>
> *Drew Nelson, for defendant-appellant.*

STADING, Judge.

Isaiah Ali Murchison-Clark ("Defendant"), appeals from the trial court's judgment entered upon a jury's verdict finding him guilty of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. On appeal, Defendant argues the trial court erred by denying his motion to dismiss the robbery with a dangerous weapon charge. After careful review, we hold no error.

## I.   Background

The record tends to show that, on 10 August 2022, at around 10:30 p.m., Kirk Mayen asked Jasmond Richardson to give him a ride to conduct a drug transaction. Ms. Richardson arrived at Mr. Mayen's home, parked her car in the cul-de-sac, and waited for Mr. Mayen to get into the car. Once outside, Mr. Mayen informed Ms. Richardson that another drug deal was about to take place outside of his home and they would need to wait a little longer before leaving. Thereafter, a silver sedan "was speeding down the street" and stopped under a streetlight. Mr. Mayen then exited Ms. Richardson's car to conduct the drug transaction.

Two people exited the silver sedan and spoke with Mr. Mayen—one wore a gray sweatshirt and the other was in all dark clothes and a ski mask. Mr. Mayen talked with the person in the gray sweatshirt while the person in dark clothing began "walking around. . . . up the hill and everything." As the person in dark clothing walked from the silver sedan to Ms. Richardson's vehicle in the cul-de-sac, he went back towards Mr. Mayen and shot Mr. Mayen several times. Mr. Mayen fell to the ground and died shortly thereafter. Immediately following the shooting, the person in gray ran back to the silver sedan. Meanwhile, the person in dark clothing "lingered slightly longer near Mr. Mayen after the shooting, but then ran back to the silver sedan" and the car "sped off."

Officer S. Volstad of the Raleigh Police Department arrived at the scene and "saw an individual laying in the street." Another Raleigh Police Officer, Joshua

Keeny, recovered footage from a doorbell camera across the street from Mr. Mayen's home. Detective Kimberly Morgan of the Raleigh Police Department arrived on scene and spoke with Mr. Mayen's family members as well as witnesses before waiting for the Bureau of Forensic Services to arrive and process the scene. Detective Morgan recovered fourteen .22-caliber shell casings with an "A" on them from the scene and a "green leafy material" from Mr. Mayen's pocket. Dr. Susan Venuti, an associate chief medical examiner, determined Mr. Mayen's cause of death was multiple gunshot wounds, including six entrance wounds to the lower chest, upper abdomen, arms, and back.

During the investigation, the Raleigh Police Department identified a "SafeLight" traffic camera recording of a "silver vehicle" with "no hubcaps" traveling in the direction of the crime scene around 10:40 p.m. A combination of the doorbell footage, witness testimony, the "SafeLight" footage, and information pulled from Mr. Mayen's cell phone led officers to identify Defendant as a suspect. In particular, the last number called on Mr. Mayen's cell phone, three minutes before the shooting, was Defendant's. From the evidence gathered, officers obtained a search warrant for call details of Defendant's phone number.

Based on Defendant's cell phone's interaction with nearby towers, detectives were able to observe his path of travel. The cell phone records revealed that Defendant was physically near Mr. Mayen's home around 10:40 p.m. on the night of the shooting. Detective Jonathan Morton of the Raleigh Police Department extracted

Defendant's cell phone data. The extracted data revealed multiple messages between Defendant and other murder suspects tending to discuss a drug deal, firearm, and robbery. The extracted cell phone data also led to the discovery that Defendant searched for a pawn shop in Burlington earlier on 10 August 2022. Further, based on information gathered from Defendant's cellphone, it showed he was physically near a pawn shop around 5:57 p.m., and shortly thereafter he searched for operating instructions for a "Mossenburg [sic] .22."

Additionally, cell phone data showed that Defendant was physically near a "Cook Out" restaurant around an hour before the shooting. Evidence offered at trial tended to show Defendant knew a Cook Out employee, Hannah Robinson, who was physically present at the restaurant around an hour before the shooting. Cell phone data from Defendant, Ms. Robinson, and James Ladson showed their devices near the crime scene around the time of Mr. Mayen's murder. And around 11:29 p.m., the cell phones of Defendant and Ms. Robinson indicated they were again at the same Cook Out. Likewise, a video from Cook Out's cameras showed Ms. Robinson at a table with Defendant removing cash from his pocket and counting it. Cell phone data subsequently extracted from Defendant's phone showed "Safari searches . . . for Raleigh shootings" on 11 August 2022, and a news article about the shooting sent to "a third party" on 12 August 2022.

Then, on 22 August 2022, Deputy Shawn Bromell with the Durham County Sheriff's Office pulled over a gray Toyota Carolla driven by Defendant for an

unrelated reason—failing to wear his seatbelt. Upon approaching Defendant's vehicle, Deputy Bromell detected an odor of marijuana and subsequently searched the vehicle. Deputy Bromell's search led to the discovery of marijuana, a gun, Adderall pills, and "several other items" including .22 caliber ammunition with a similar marking—the letter "A"—to those found on the scene of Mr. Mayen's murder.

Defendant, Ms. Robinson, and Mr. Ladson were subsequently arrested for the murder of Mr. Mayen. On 24 October 2022, a grand jury returned true bills of indictment for Defendant on the charges of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and murder. Defendant's trial began on 17 February 2025. At the close of the State's evidence, Defendant moved to dismiss the charges. The trial court denied Defendant's motion to dismiss. Defendant did not present evidence but renewed his motion, which the trial court also denied. The jury returned a verdict convicting Defendant of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Defendant orally entered his notice of appeal.

## II. Analysis

The sole issue is whether the trial court properly denied Defendant's motion to dismiss. Defendant's only argument concerns whether "the trial court erred by failing to grant the motion to dismiss the charge of robbery with a firearm" because the State failed to adduce substantial evidence that Defendant deprived Mr. Mayen of "any property."

"We review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016) (citation modified). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (cleaned up). The standard applied by the trial court when ruling on a motion to dismiss is well settled:

> In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion.
>
> In deciding whether substantial evidence exists: The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 842–43 (2011) (cleaned up).

Further, "circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Perry*, 389 N.C. 88, 92, 926 S.E.2d 726, 730 (2026) (quoting *State v. Tirado*, 358 N.C. 551, 582, 599 S.E.2d 515, 532 (2004)). And when the motion to dismiss "calls into question the sufficiency of circumstantial evidence, the question

for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Id.* (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

Here, Defendant challenged the sufficiency of the State's evidence with respect to the first element of robbery with a dangerous weapon. That is, "an unlawful taking or an attempt to take personal property from the person or in the presence of another . . . ." *State v. Mann*, 355 N.C. 294, 303, 560 S.E.2d 776, 782 (2002) (citation modified); *see also* N.C. Gen. Stat. § 14-87 (2025). Defendant's argument rests on the assertion that circumstantial evidence offered by the State merely permitted the jury to "assume . . . each element of the alleged crime." That said, the record contains sufficient evidence, when viewed in a light most favorable to the State, to support the assertion that Defendant unlawfully took or attempted to take Mr. Mayen's personal property. Indeed, the evidence supports a reasonable inference that the money Defendant possessed on the Cook Out video, an hour after Mr. Mayen's death, was in Mr. Mayen's possession during the drug deal. *See State v. Thomas*, 296 N.C. 236, 244–45, 250 S.E.2d 204, 209 (1978) ("[E]vidence favorable to the State is to be considered as a whole in order to determine its sufficiency. This is especially necessary . . . when the proof offered is circumstantial, for rarely will one bit of such evidence be sufficient, in itself, to point to a defendant's guilt."); *see also Perry*, 389 N.C. at 96, 926 S.E.2d at 732 (citation omitted) ("We emphasize that the evidence at this stage need not convince the judge beyond a reasonable doubt; rather, evidence

need only allow for a 'reasonable inference of the defendant's guilt.' ").

Moreover, in the light most favorable to the State, the evidence tended to show the analyzed cell phone data placed Defendant at the crime scene at the time of the shooting. The witness testimony offered by Ms. Richardson tended to show Defendant and Mr. Mayen were engaged in a drug transaction. Cell phone data extracted from Defendant's cell phone revealed messages between Defendant and others discussing a robbery to take place the night of Mr. Mayen's death. Video camera footage from Cook Out about an hour after Mr. Mayen's murder tended to show Ms. Robinson at a table with Defendant removing cash from his pocket and counting it. The evidence, considered as a whole, is sufficient to allow a jury to decide whether "the evidence satisfies them beyond a reasonable doubt" that Defendant is guilty. *Perry*, 389 N.C. at 95, 926 S.E.2d at 732. The dispositive question concerning whether a motion to dismiss should be denied is whether "there is more than a scintilla of evidence, 'whether direct or circumstantial, or a combination, to support a finding that the offence charged has been committed and that the defendant committed it.' " *Id.*; *see also State v. Salters*, 137 N.C. App. 553, 557, 528 S.E.2d 386, 390 (2000) (citation omitted) ("[J]urors may rely on circumstantial evidence to the same degree as they rely on direct evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence."). Where, as here, "there is more than a scintilla of evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and

that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *See Perry*, 389 N.C. at 92, 926 S.E.2d at 730 (citation modified). In sum, the first element of robbery with a dangerous weapon, an unlawful taking or attempted taking of property, was supported by substantial evidence. *See id.* Additionally, the uncontroverted evidence offered at trial supports the remaining elements of robbery with a dangerous weapon. That is, the evidence showed a .22 caliber firearm was used to shoot Mr. Mayen six times, ultimately causing his death. *See Mann*, 355 N.C. at 303, 560 S.E.2d at 782. Accordingly, we discern no error.

### III.  Conclusion

For these reasons, the trial court did not err in denying Defendant's motion to dismiss the charge of robbery with a dangerous weapon since the State adduced sufficient evidence to send the charge to the jury.

NO ERROR.

Judges HAMPSON and GRIFFIN concur.

Report per Rule 30(e).